# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Linwood Gray,** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>**Harry Staley, *et al*.,** )<br><br>**Defendants.** ) | **Civil No. 1:14-cv-00937 (APM)** |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Plaintiff Linwood Gray is a *pro se* litigant who has accused Defendants Harry, Annis, and Joann Staley of committing fraud and using the proceeds to enrich themselves at his expense.  The fundamental problem with Gray's complaint is that many of the events comprising the alleged fraud took place over 30 years ago.  Not surprisingly, Defendants have moved to dismiss all of Gray's claims as barred by the applicable statute of limitations.  But Defendants' motion to dismiss is not the only motion pending before the court.  Gray has filed a host of other motions requiring the court's attention.  The court considers all of them below.  Ultimately, all of Gray's filings are for naught, because the court concludes that Gray's claims are untimely and thus grants Defendants' motion to dismiss the complaint with prejudice.

## II.    BACKGROUND

### A.    Factual Background

According to the Complaint, beginning in 1977, Plaintiff Linwood Gray and Defendant Harry Staley discussed possible investment opportunities, including the option of purchasing

McDonald's franchises.  Compl. ¶ 7, ECF No. 1.  In 1978, the two men opened an insurance company to generate income to purchase the franchises.  *Id.* ¶ 10.  Plaintiff contributed $25,000 toward the company, as well as a new Cadillac that was intended to be the company car.  *Id.* ¶¶ 11-12.

In 1982, Gray entered into another arrangement with Harry Staley, as well as Harry's then-wife, Defendant Joann Staley.  *Id.* ¶ 17.  Plaintiff had his residence transferred into the control of Harry and Joann,[1] who were to hold the property on Plaintiff's behalf.  *Id.* ¶¶ 17-19.  Thereafter, without Plaintiff's knowledge, Harry and Joann acquired a personal loan against the property. *Id.* ¶ 20.

Several years later, in 1985, Gray asked Harry and Joann to take out a loan against his residence to save the property from foreclosure.  *Id.* ¶ 21.  Harry and Joann then allegedly lied to Plaintiff, claiming that they could not find a lender, and failed to inform him that they already had encumbered the home with a personal loan.  *Id.* ¶¶ 22-23.  In late 1985, the house was sold at a foreclosure auction.  *Id.* ¶ 24.  Without Gray's knowledge, Harry and Joann received $50,000 from the sale.  *Id.*

Fast-forward 26 years to 2011.  In mid-2011, Gray allegedly learned for the first time that Harry and his new wife, Defendant Annis Staley, "had secretly opened 'seven' McDonald's franchises, in the state of New Jersey without apprising Plaintiff of their acquisitions," using "Plaintiff's capital . . . to make the initial franchise acquisitions."  *Id.* ¶¶ 25-26.  An email attached to Plaintiff's complaint shows that on May 26, 2011, he asked a friend named Johnnie Ervin to

---

[1]As noted by Defendants in their motion to dismiss, the deed presented by Plaintiff as evidence of this transfer shows a transfer of the property from a "Kenneth Michael Robinson"—not "Linwood Gray"—to Defendants Harry and Joann Staley.  *See* Defs.' Mot. to Dismiss, ECF No. 11 at 8 n.2; Compl., Ex. 1, ECF No. 1-1 at 1-5.  In a later pleading, Plaintiff claimed that he originally had put his property in his attorney's name—Kenneth Michael Robinson—and then arranged for the property to be transferred into the care of the Staleys.  *See* Pl.'s Reply to Defs.' Mot. to Dismiss, ECF No. 17 at 9, 13.  Ultimately, this distinction is immaterial.  Even if Plaintiff had legal authority to transfer the property, his claim is still time-barred, as discussed below.

"run down a guy named Harry L. Staley. . . .  Could be the owner of a few McDonalds and possibly live in NJ, [which is] the last address I had on him."  Compl., Ex. 1 at 6.  Five days later, on May 31, 2011, Ervin wrote back confirming that Staley indeed was the owner of seven McDonald's franchises.  *Id.*

### B.     Procedural Background

On May 28, 2014, almost three years to the day after he received the email from Ervin, Gray filed suit against the Defendants.  *See* Compl.  Asserting that Defendants' McDonald's franchises were financed in part by profits from his investments and the sale of his house, Plaintiff brought various claims against Defendants: (1) aiding and abetting; (2) constructive fraud; (3) civil conspiracy; (4) unjust enrichment; (5) breach of fiduciary duty; (6) violation of the Uniform Partnership Act; (7) false misrepresentation; and (8) fraudulent concealment.  *Id.* at 1.  According to service affidavits, all three Defendants were served on June 25, 2014.  ECF No. 3.

Nearly two months passed, and Defendants had yet to answer the complaint.  On August 20, 2014, Gray applied to the clerk of court for an entry of default, which the clerk granted the following day.  *See* Decl. for Entry of J., ECF No. 4 at 1-2; Entry of Default, ECF No. 5 at 1.  One month later, on September 23, 2014, Defendants moved to vacate the entry of default.  ECF No. 8.  In the interim, on September 5, 2014, Gray filed his first motion for entry of a default judgment in the amount of $75 million.  ECF No. 6.  On October 2, 2014, Gray filed a second motion for entry of default judgment.  ECF No. 10.  On October 6, 2014, Gray filed a third motion for entry of default judgment.  ECF Nos. 12, 13.  That same day, Defendants filed their motion to dismiss.  ECF No. 11.  Gray also has filed a number of additional motions in these proceedings, which the court addresses in the discussion below.

III.    **LEGAL ANALYSIS**

   A.    **Motion to Vacate Entry of Default and Motions for Default Judgment**

The court first considers Gray's three motions for entry of default judgment and Defendants' motion to vacate the entry of the default.  Our Court of Appeals has observed that "strong policies favor resolution of disputes on their merits." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980); *Keegel v. Key W. & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980) (observing that "modern federal procedure favor[s] trials on the merits").  Thus, entry of default judgment "must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Jackson*, 636 F.2d at 836 (citation omitted) (internal quotation marks omitted).

Where, as here, the clerk of the court has entered a default, the court has the discretion to vacate it under Federal Rule of Civil Procedure 55(c).  *See Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011).  Under Rule 55(c), "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).  In deciding whether good cause exists, the court must consider whether "(1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Keegel*, 627 F.2d at 373.  To show willfulness, a moving party need not establish bad faith, though it must demonstrate more than mere negligence.  *See Wilson v. Superclub Ibiza, LLC*, 279 F.R.D. 176, 179 (D.D.C. 2012).  As for prejudice, delay alone is not enough; rather, the court must consider its "accompanying dangers," such as loss of evidence, difficulty of discovery, or enhanced opportunity for fraud or collusion.  *Id.* at 180 (citation omitted) (internal quotation marks omitted).  Finally, an alleged defense is meritorious "if [it] contain[s] 'even a hint of a suggestion,' which proven at trial, would constitute a complete defense." *Keegel*, 627 F.2d at 374. Even a "somewhat broad and conclusory" allegation can adequately satisfy the meritorious defense

criterion. *Id*. Because of the strong preference for resolving disputes on the merits, any doubts must be resolved in favor of the party seeking relief from the default. *Jackson*, 636 F.2d at 837; *Superclub Ibiza*, 279 F.R.D. at 179.

Each of the Rule 55(c) factors weighs in favor of vacating the entered default. First, Defendants' failure to respond to the complaint in a timely manner was willful in the sense that Defendants acknowledge receiving the complaint and yet did not file a timely response. But the court finds that it was not "willful" in the sense contemplated by Rule 55. *See Int'l Painters & Allied Trades Union and Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2008) ("The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable."). In sworn affidavits submitted with their motion, Defendants explained that, because of Gray's criminal history—which includes convictions for extortion and fraud on the Internal Revenue Service[2]—and because of their personal history with him—which includes prior efforts at intimidation—they delayed in responding to Plaintiff's suit because they feared it was a scam or another effort to intimidate them. *See Harry Staley Aff. ¶¶ 11-15, ECF No. 8-1; Annis Staley Aff. ¶¶ 13-16, ECF No. 8-2; Joann Staley Aff. ¶¶ 11-15, ECF No. 8-3. After conferring with legal counsel, Defendants learned that the suit was not in fact a scam and that their response was required. *See, e.g.*, Harry Staley Aff. ¶¶ 16-17. With the assistance of counsel, Defendants then filed their motion to vacate a little over two months after their response had been due. In light of the parties' histories, the court finds that Defendants' belief that the complaint might be a scam was reasonable, as was the delayed response that resulted from that belief. And, in the present posture, Defendants are entitled to the benefit of any doubt.

---

[2] *See United States v. Linwood Gray*, 852 F.2d 136, 127 (4th Cir. 1988).

*See Superclub Ibiza*, 279 F.R.D. at 179.  Defendants should have consulted with counsel sooner. But their two-month delayed response, under the circumstances, does not suggest a deliberate effort to default or otherwise delay the litigation.  In other words, they have not "fail[ed] to defend against a case or otherwise engage[ ] in dilatory tactics" to such an extent that would justify an entry for default.  *See Teamsters Local 639-Emp'rs Health Trust v. Boiler & Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 106 (D.D.C. 2008).

Plaintiff has also failed to make a credible showing that vacating the entry of default would result in prejudice to him.  The complaint's allegations describe events that occurred nearly 30 years ago.   It is hard to conceive how a two-month delay in responding to the complaint would substantially prejudice Plaintiff's pursuit of claims rooted in events that occurred decades ago. *See Superclub Ibiza*, 279 F.R.D. at 180 (finding defendants' filing of a response "just one month after the entry of default" to constitute "minimal delay").   But the court need not speculate. Plaintiff's only claim of prejudice is that a key witness, Matty McClinton, died on September 5, 2014.  Pl.'s Opp'n to Defs.' Mot. to Vacate Entry of Default, ECF No. 12 at 9.  McClinton, according to Plaintiff, died when, upon hearing of the "'default' being issued by the clerk, she was overwhelmed to limits that were unbearable, [and] she had a heart attack in her sleep."  *Id.*

Leaving aside the questionable forensic conclusion that someone can become so "overwhelmed and elated" while asleep to suffer a heart attack, Plaintiff's argument that Defendants' delayed response deprived him of critical evidence is unconvincing.  McClinton apparently participated in and recorded telephone conversations between Plaintiff and Harry Staley, which she saved on CDs.  The CDs could not be found after her death.  *See id.*  Plaintiff does not specify when these calls occurred, but given his allegation that Harry Staley cut off all telephonic communications in 2011, Compl. at 6 n.1, presumably the calls occurred before then.

Plaintiff had years to preserve the evidence that he now claims was critically lost with McClinton's death. Thus, Defendants' two-month delayed response cannot be said to have caused Plaintiff's inability to access the alleged recorded calls.

Defendants also meet the final criterion for showing good cause to vacate entry of default—they have put forth valid defenses. *Keegel*, 627 F.2d at 373-74. Defendants' statute of limitations defense, as discussed further below, clearly constitutes a complete defense. So, too, do their complete denials of the complaint's basic allegations. Accordingly, the court has no trouble concluding that Defendants have advanced meritorious defenses that contain "'even a hint of a suggestion' which, proven at trial, would constitute a complete defense." *Id.* at 374 (citation omitted) (internal quotation marks omitted).[3]

The court thus grant Defendants' motion to vacate the entry of default and denies Plaintiff's motions for entry of default judgment.[4]

### B.   Motion to Dismiss

Defendants' primary ground for dismissal is that all of Gray's claims are barred by the statute of limitations.[5] Defs.' Mot. to Dismiss, ECF No. 11 at 4. Because this is an action brought under the court's diversity jurisdiction, the court applies to each of his claims the applicable limitations period under District of Columbia law. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995); *Kettey v. Saudi Ministry of Educ.*, 53 F. Supp. 3d 40, 52-53 (D.D.C. 2014). Gray's assertion that Maryland law applies, Pl.'s Reply to Defs.' Mot.

---

[3] Defendants also contend that their default should be excused because they were not properly served. The court does not reach that question in light of its decision to vacate the default under Rule 55.

[4] On February 26, 2015, Gray filed a motion seeking leave of court to amend his opposition to Defendants' motion to vacate. Mot. for Leave to Amend, ECF No. 24. As the facts set forth in that motion are immaterial to the question whether to vacate the default judgment, the court denies that motion.

[5] Defendants also assert that Gray's causes of action are barred by the doctrine of laches and should be dismissed for failure to state a claim. Because the court concludes that Gray's claims are untimely, the court does not address these arguments.

to Dismiss, ECF No. 17 at 3-4, is therefore incorrect.  All of his claims are subject to the catch-all three-year limitations period under D.C. Code § 12-301(8).

In assessing Defendants' argument, the court is mindful that the Court of Appeals has cautioned against granting motions to dismiss based on the statute of limitations.  *See Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981).  "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred."  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  As part of its review of the complaint, the court may consider "documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is" produced by the defendant on the motion to dismiss. *Hinton v. Corrections Corp. of America*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citation omitted) (internal quotation marks omitted).  The court may also "consider matters about which the [c]ourt may take judicial notice."  *Hinton*, 624 F. Supp. 2d at 47 (citation omitted) (internal quotation marks omitted).  *See also Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 110 (D.D.C. 2002) (stating that, when considering a motion to dismiss on limitations grounds, the court may consider "matters of public record" and documents referenced in the pleading and attached to the motions papers).

Generally, for tort claims such as those alleged here, a claim accrues when the injury occurs.  *See Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001) ("[W]here the fact of injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs.") (citation omitted) (internal quotation marks omitted).  However, "where the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs," District of Columbia law applies the "discovery rule" to determine when the limitations period started running.  *Morton v. Nat'l Med. Enters., Inc.*, 725 A.2d 462, 467-68 (D.C.

1999).  Under this rule, a cause of action only begins to accrue once a party "knows or, through the exercise of reasonable diligence should have known, of the injury suffered as a result of the wrongdoing."  *Am. Fed'n of Teachers, AFL-CIO v. Bullock*, 539 F. Supp. 2d 161, 166 (D.D.C. 2008).  *See also Mullin*, 785 A.2d at 298–99 (D.C.2001); *Bussineau v. President & Dirs. of Georgetown Coll.,* 518 A.2d 425, 425 (D.C. 1986).  In other words, a claimant need only be on inquiry notice of a claim—rather than actual notice—for the statute of limitations to begin to run.

Applying the foregoing principles, and viewing the complaint's allegations in the light most favorable to Plaintiff, the court concludes that Plaintiff's claims are conclusively time-barred. The alleged activities giving rise to Gray's claims all occurred nearly 30 years ago, in the late 1970s and early- to mid- 1980s.  By 1978, Gray and Staley had formed the insurance company that was to fund their McDonald's franchise purchases.  *Id.* ¶¶ 10-15.  Gray placed his residence in the name of Harry and Joann Staley in 1982, and soon thereafter, Harry and Joann took out a loan on the property without Gray's permission.  *Id.* ¶¶ 17-20.  In 1985, the Harry and Joann lied to Gray about the possibility of taking out a loan against the property to save it from foreclosure. *Id.* ¶¶ 21-23.  Only a few months after that, when the home was sold at auction, Harry and Joann kept the proceeds from Plaintiff, later using the money to purchase McDonald's franchises.  *Id.* ¶¶ 24, 26.  Thus, Plaintiff's injury arose, and his causes of action began to accrue, at the latest, in 1985, when Harry and Joann misappropriated the proceeds of the property sale.  Therefore, absent application of the discovery rule, his claims are time-barred under the three-year limitations period.

Invoking the discovery rule, Plaintiff asserts that his claims are timely because he had no knowledge of the fraud allegedly committed by Defendants until May 31, 2011, when he received confirmation from Johnnie Ervin that Defendants indeed were the owners of multiple McDonald's franchises.  Compl. 1, Ex. 1 at 6.  But the discovery rule does not save Plaintiff's claims.  The

complaint, accompanying documents, and judicially noticeable facts make clear that, had Plaintiff exercised "reasonable diligence," *Am. Fed'n of Teachers, AFL-CIO*, 539 F. Supp. 2d at 166, he would have discovered the tortious acts and the injury of which he now complains more than three years before he filed his complaint on May 28, 2014.

An email attached to the complaint shows that Plaintiff was on inquiry notice about the Staleys' ownership of the McDonald's franchises more than three years before the complaint was filed. On May 26, 2011, Gray emailed Johnnie Ervin, asking him for information about Staley. Compl., Ex. 1 at 6. Gray told Ervin that Harry Staley "could be the owner of a few McDonalds and possibly lives in NJ." *Id.* Within five days, Ervin was able to confirm that Staley was the owner of seven McDonald's franchises in New Jersey and that he was a member of the National Black McDonald's Operators Association. *Id.*

The email exchange between Gray and Ervin makes two things clear. The first is that, at least as of May 26, 2011, two days outside of the three year statute of limitations period, Gray had knowledge about the Staleys' possible ownership of McDonald's franchises and thus was on inquiry notice of his claims. The second is that the Staleys' ownership of McDonald's franchises was not difficult to discover before May 2011. Ervin quickly learned, in less than five days, that Harry Staley owned seven franchises and was a member of the National Black McDonald's Operators Association. *Id.* Thus, this is not a case in which an alleged fraudster concealed his use of misappropriated funds. To the contrary, Harry apparently used them exactly as he and Gray allegedly had planned in the late 1970s. With reasonable diligence, Plaintiff could have discovered his causes of action against Defendants more than three years before he filed his complaint.

Furthermore, as it is permitted to do, the court takes judicial notice of the adjudicated facts set forth in *United States v. Gray*, 852 F.2d 136 (4th Cir. 1988), and *United States v. Gray*, 788

F.2d 1031 (4th Cir. 1986).  F.R.E. 201(b); 29 Am. Jur. 2d § 151 (2010) (noting that the courts may take notice of adjudicative facts, including court records in related proceedings).[6]  Plaintiff and Defendant Harry Staley were co-defendants in that case, which seemingly involved the same piece of residential property at issue here.  *See Gray*, 852 F.2d at 137 ("[T]he lawyer agreed to turn over title to Gray's friend, Harry L. Staley, who assumed responsibility for a mortgage the lawyer had taken out on the property."); *Gray*, 788 F.2d at 1032 ("Robinson conveyed the house to the defendant Staley").  If the property at issue is the same—Gray says it is, *see* Request for Judicial Notice, ECF No. 28[7]—then Gray would have been on inquiry notice of the property's foreclosure sale in 1985, which occurred during the pendency of his and Staley's criminal case and remained in active litigation until 1988.  Plaintiff cannot now claim, nearly 30 years after the sale, that he could not have learned through the exercise of reasonable diligence what happened to the subject property when the very same property was at issue in his criminal case.  He easily could have asked his then-lawyer what had become of the property.  Or he could have conducted a public records search, then or any time thereafter, which would have evidenced the property's foreclosure and sale.

In one of his pleadings, Plaintiff asserts that he was unable to discover for over 30 years that he had claims against the Staleys because they consistently lied to him about the status of their investments and concealed their purchase of the McDonald's franchises.  Pl.'s Reply to Defs.' Mot. to Dismiss at 17.  He further claims that he first grew suspicious of Harry Staley in "the end of 2010 or the first month of 2011," when "Harry became un-contactable, after Plaintiff requested

---

[6] Gray has asked the court to take judicial notice of *United States v. Gray*, 852 F.2d 136 (4th Cir. 1988), albeit for a different reason—to show that Harry Staley lied in an affidavit when he denied that Gray had transferred his residence to him.  ECF No. 28.  Because the court takes judicial notice of the adjudicated facts set forth in *United States v. Gray*, the court grants Gray's motion.

[7] Also, the name of the lawyer identified in *Gray*, 788 F.2d at 1032, Kenneth Robinson, is the same name identified as the transferor on the deed that is included with the complaint.  *See* ECF 1-1 at 1.

an accounting statement from him." *Id.* But even if those facts are assumed true, they don't help

Gray. He admits that he was on inquiry notice no later than the "first month 2011" or shortly after

that date, when Harry Staley cut off communications with him. If Gray had exercised reasonable

diligence when he became suspicious of Harry Staley in the "first month of 2011," he would have

known the facts comprising his claim months before May 28, 2011. After all, it only took Ervin

no more than five days to learn about the Staleys' McDonald's ownership. Accordingly, even

under his own facts, Gray's claims are barred by the statute of limitations.

Finally, Defendants have asked the court to dismiss the complaint with prejudice.

"A dismissal *with* prejudice is warranted only when a trial court determines that the allegation of

other facts consistent with the challenged pleading could not possibly cure the deficiency."

*Firestone*, 76 F.3d at 1209 (citation omitted) (internal quotations omitted). The court concludes

that dismissal with prejudice is appropriate here. The court cannot conceive of any facts that

Plaintiff could plead, consistent with the allegations made in his complaint and the statements

made in his pleadings, which would rescue his time-barred claims.

### C.    Motion for Sanctions

Plaintiff also asks the court to sanction Defendants' counsel, Brent M. Ahalt, for various

statements contained in Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss.

Mot. Pursuant to Rule 11(c)(3), ECF No. 25 at 4 [hereinafter Mot. for Sanc.]. Plaintiff argues that

Ahalt violated Federal Rule of Civil Procedure 11(b) by committing "perjury" and making

frivolous claims in Defendants' Response to Plaintiff's Opposition to Motion to Dismiss. *Id*. at 4-

13.

Under Federal Rule of Civil Procedure 11, the court may impose sanctions on attorneys if:

a pleading, written motion, or other paper . . . [is] presented for any improper
purpose[;] . . . the claims, defenses, and other legal contentions therein are

> [un]warranted by existing law [;] . . . the allegations and other factual contentions
> have [no] evidentiary support[; or] the denials of factual contentions are
> [un]warranted on the evidence[.]" Fed. R. Civ. P. 11(b).  "The imposition of Rule
> 11 sanctions is not something the court takes lightly; Rule 11 sanctions are an
> extreme punishment for filing pleadings that frustrate judicial proceedings.

*Naegele v. Albers*, 355 F. Supp. 2d 129, 144 (D.D.C. 2005).

The court has reviewed each of the four claimed Rule 11 violations asserted by Gray. Each is meritless.  The statements made by Defendants' counsel that Plaintiff alleges are false are better characterized as reasonable argument about the Complaint's allegations than objective misstatements of fact.  The court does not view them as efforts to mislead it.  Further, in the one instance where counsel mistakenly asserted that Plaintiff had not alleged a certain fact about a company car in his Complaint, when in fact Plaintiff had so alleged, *see* Compl. ¶ 12, counsel filed a correction, ECF No. 23.  Counsel correction's demonstrates that he understands his duty of candor to the court.  Accordingly, the court finds no basis to impose sanctions upon defense counsel.  Plaintiff's motion for sanctions is denied.

## VI.    CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion to Vacate Entry of Default and denies Plaintiff's various motions for entry of default judgment.  Furthermore, the court grants Defendants' Motion to Dismiss with prejudice, and denies Plaintiff's motion for sanctions.

A separate order accompanies this memorandum opinion that sets forth the court's rulings as to each of the pending motions.

Dated:  August 10, 2015

Amit P. Mehta
United States District Judge